## Case No. 8,350.

### LILLIBRIDGE v. ADIE.

[1 Mason, 224.] [1]

Circuit Court, D. Rhode Island. June Term, 1817.

WILLS — CONSTRUCTION — FEE TAIL—VESTED REMAINDER—CROSS REMAINDERS IN TAIL—JOINT TENANCY—TENANCY IN COMMON.

Devise by testator to his wife for life, and after her decease to his two daughters, A and B, to them, their heirs and assigns; but in case they should die without issue, the same should go to, and vest in, their two sisters, C and D. Held, that the devise to A and B, was a fee tail, and not a fee simple, the contingency, upon which the limitation was to take effect, not being limited to a life in being, but being upon an indefinite failure of issue; and that the estate to C and D, was a vested remainder, to take effect upon the death of both A and B, without issue. That cross remainders in tail were to be implied between A and B. That, at common law, A and B would take joint estates for life, with several remainders in tail to their issue; but by the statute of Rhode Island, it would be turned into a tenancy in common, and several estates tail in possession vested in them. Quaere, whether C and D took estates for life, or in fee, under the will.

[Cited in Arnold v. Buffum, Case No. 554.]

This was a real action, brought by [Gardner Lillibridge] the demandant, as son and heir of Charlotte Lillibridge, deceased, to recover one undivided fourth part of a certain estate, situate in Providence. There was a special count in the nature of a formedon, to which the general issue was pleaded. At

the trial at November term, 1816, the parties agreed to the following statement of facts: That Thomas Sabin, the testator, being seised of the demanded premises in fee simple, made his will, which is in the case, dated the ninth day of August, 1797; and afterwards, being seised of the same premises, died in August, 1800. And the said will was afterwards duly proved and approved on the 3d of November, 1800. That after the death of said Thomas, Mary Sabin, the wife of the testator, entered into, and remained seised of, the premises in her demesne as of freehold, with remainder expectant thereon, as stated in said will, and afterwards, in January, 1805, the said Charlotte, the daughter, died, leaving the demandant,· her son and sole heir at law. And afterwards, in June, 1817, the said Harriet, the daughter, died without issue. And in June, 1808, the said Mary Sabin, the mother, died. And afterwards, in 1815, the said Clementina, who was the wife of the said Alexander Adie, died, leaving issue by the said Alexander, which issue are yet alive. And the said Mary Sabin, the daughter, is yet living. And after the death of the said Mary Sabin, the mother, the said Clementina, and the said Alexander Adie entered into the premises, and became seised of the same in right of the said Clementina; and after her death as aforesaid, the said Alexander Adie, the defendant, remained seised of the premises, claiming the same as tenant by the courtesy, and the other defendants hold as tenants under said Adie. The above statement of facts was agreed by the parties to be in the nature of a special verdict. If the court thereon should be of opinion, that the plaintiff was entitled to recover, judgment to be entered accordingly; otherwise judgment to be entered for the demandants. The material clause in the will, referred to in the statement of facts, is as follows: "I give, grant, and devise, unto my beloved wife, Mary Sabin, all that my lot, where I now dwell, with the dwelling-house, store, and wharf thereon standing and being, for and during the term of her natural life; and after her decease, to my two beloved daughters, Harriet and Clementina, to them, their heirs, and assigns for ever; but in case they should die without issue, my will is, that the same shall go to, and vest in, their two sisters, Mary and Charlotte."

Bowen & Searle, for demandant.
Tristram Burgess, for tenants.

After argument the case was continued to this term for advisement.

Mr. Bowen, for demandant. We conceive the plaintiff is entitled to recover the demanded premises, upon the principle, that the devise vested an estate in fee simple in Harriet and Clementina, determinable upon the contingency of either or both dying without issue: and in that event vesting in Mary and Charlotte by executory devise. The first in-

[1] [Reported by William P. Mason, Esq.]

quiry is, what was the intention of the testator? The second, can this intention be carried into effect, consistently with the established rules of law? The obvious intention of the testator we conceive to be, that in case either or both of the first devisees died without issue living at their death, the estate of the one or of both so dying should go over to Mary and Charlotte. He clearly did not mean, as is insisted by the demandant, that Harriet or Clementina should take the part of her, who happened to die first without issue, as joint tenant; because if such had been his intention, he would have so expressed it. By the common law, perhaps, the devise to Harriet and Clementina, to them, their heirs, and assigns, without more, would have created a joint tenancy; but the subsequent clause, "if they should die without issue, that the same shall·go to, and vest in, their two sisters, Mary and Charlotte," directly overthrows this principle. Our statute, also (Laws R. I. p. 272, § 8), decides this point, and undoubtedly makes it a tenancy in common. It will not do for the demandant to contend, that the statute was not passed at the date of the will, for the same construction must be put upon the will as at the testator's death. Goodman v. Goodright, 2 Burrows, 878. The statute was passed in 1798, and the testator died in 1800; and the statute extends to all cases, where the estate had not then actually vested. The cases cited all show, that Harriet and Clementina took a fee simple contingent; and that the devise over is a good executory devise. Thus in the case of Hughes v. Sayer, 1 P. Wms. 534, where there was a devise over to the survivor, in case either devisee died without children, it was held, that the testator meant a·dying without children living at the death of the parent, and consequently that it was a good executory devise. In Pells v. Brown, Cro. Jac. 590, there was a devise to Thomas and his heirs for ever, paying to his brother Richard twenty pounds at the age of twenty-one, and if Thomas died without issue, living William, then William should have the lands. The words "living William" probably had some influence at that time, in deciding the case; but we submit that from the current of authorities, without this limitation, the words "dying without issue" would have been properly construed, not an indefinite failure of issue, but a dying without issue living at the death of the first taker. And in direct affirmance of this principle, in Porter v. Bradley, 3 Term R. 143; Wilkinson v. South, 7 Term R. 555,— Lord Kenyon says, "If indeed the first words, 'leaving no issue,' had been used, they, according to the opinion of Lord Mansfield, in Forth v. Chapman, [infra], must be restrained to leaving issue at the time of his death." Lord Kenyon again observes, in Roe v. Jeffery (7 Term R. 589), "This question, in this and similar cases is, whether, from the context of the will we can collect, that where

an estate is given to A, and his heirs for ever, but if he die without issue, then over, the testator meant dying without issue living at the death of the first taker." These are the leading cases on this subject in the English books, and we find their principles have been adopted by some of the most distinguished state courts in this country. Fosdick v. Cornell, 1 Johns. 440; Jackson v. Blanshan, 3 Johns. 292; Jackson v. Staats, 11 Johns. 348; Richardson v. Noyes, 2 Mass. 56; Ray v. Enslin, 2 Mass. 554. Kent, Justice, in Jackson v. Blanshan, says, that in Fosdick v. Cornell the Court reviewed the leading authorities, and held that the devise over was a good executory devise, and that the true construction was, a devise over to take effect on failure of male issue during the life of the first taker. That devise too contained the technical words "heirs male of their bodies."

We are aware of the rule, that an executory devise shall be void, if it be not limited to take effect within a life or lives in being. But we conceive, that the limitation over is to take effect within the time above described. The authorities referred to decisively show, that an indefinite failure of issue was not intended. Indeed, since the case of Pells v. Brown, but few, if any, cases can be found to support the technical rule, that dying without issue means an indefinite failure of issue. Courts have seized the slightest circumstances to prevent its operation, when it would evidently go to defeat the intention of the testator. There is another principle which will, probably, be urged by the defendant, viz. that if a contingent estate be limited to depend upon a freehold, which may support a remainder, it shall be construed a remainder and not an executory devise. This is not in our way, because here was a life estate first given to the widow with a fee after it, and the contingent limitations depend, not on the life estate, but the fee. Nor is this principle immutable, where the intention of the testator contradicts it. Again: This contingent estate cannot take effect, as a remainder, if the first devise is a fee simple, with a limitation in fee to Mary and Charlotte, because it would be limiting a fee upon a fee, contrary to the common law, which gives birth to remainders; but may be done by an executory devise, as a testamentary disposition. Again: There can be no doubt, that the ulterior devise over is as extensive as the antecedent one, although there are no express words of inheritance. The testator gave a fee to the first devisees, and he intended the same, in a certain event, should go to, and vest in, the last. We have not touched the doctrine of estates tail, because the defendant put the case expressly upon the ground of a joint tenancy. If he changes his position, we pray an opportunity to answer and amend our declaration accordingly.

Tristram Burgess, for tenant, contended,

first. Clementina and Harriet are joint tenants, and therefore, Clementina, being survivor, takes all. To prove joint tenancy, see Blackstone on that title. 2 Bl. Comm. 179. There are no restrictive words in the will. They have one interest, commencing at one time, by one title, and held by one possession. But the statute of the state is objected. This statute was made after Sabin made his will, though before his death; if therefore he uses the words, which, at the time of making the will, would convey a joint tenancy, the words ought now to be so construed. The words "to them, their heirs and assigns for ever," always conveyed a joint tenancy. But the statute says, that if from the words of the will it appears to be the intention of the party, that the lands should be holden in joint tenancy, they shall be so holden. Now if it appears by the will, that the testator intended, that other parts of the estate should be held as a tenancy in common, we must conclude he did not intend this should be so holden. The will was written by a professional man. Several devises are made to several devisees, "to them, their heirs and assigns for ever," with these words added, "to be equally divided between them." These words cut off survivorship, and reduce a joint tenancy to a tenancy in common. King v. Rumball, Cro. Jac. 448; 3 Coke, 39; 3 Mod. 209. The words "equally to be divided," being used in other devises in the will, and not in the devise to Clementina and Harriet, it is manifest, from the words of the will, that the testator intended the devise to Clementina and Harriet should be a joint tenancy, and not a tenancy in common. The words of the devisee are very technical, viz. "All that my estate," &c. The subject of the devise is one, "to them, their heirs," &c.; the object is one, viz. "them, their heirs," &c. expressly; and no implication of law can divide the estate, and give a part of it to the plaintiff, as heir at law of Charlotte. But if it be not a joint tenancy in Clementina and Harriet, it must be in them an estate tail; for though the words "to them, their heirs and assigns for ever," are used, yet in the condition, heirs seem to be restricted, by the words "issue of," to heirs of their bodies. Davie v. Stevens, Doug. 321; Wood v. Baron, 1 East, 259; Cruise, 278, § 20; Fearne, Exec. Dev. 350. If Clementina and Harriet took estates tail by the devise, then they also took cross remainders. Dyer, 303, 330; Chadock v. Cowley, Cro. Jac. 695; Holmes v. Meynel, T. Raym. 452; Wright v. Holford, Cowp. 31; Swinb. Wills, 172; 4 Leon. 14. But if Clementina and Harriet took cross remainders, then the plaintiff cannot take, until the deaths of Clementina and Harriet and all their issue. In the case of Wright v. Holford, it is said, that a limitation over in default of all the issues creates cross remainders. But the present plaintiff claims under the clause, "but in case they (Clementina and Harriet) should die without issue,

my will is, that the same shall go to, and vest in, their two sisters Mary and Charlotte." If, therefore, Clementina and Harriet do not take estates tail with cross remainders, nor take as joint tenants, they take fee simple estates; and the devise over to Mary and Charlotte is an executory devise, to take effect on failure of issue of both Clementina and Harriet. But a devise executory to take effect after a dying without issue is void. Fearne, Exec. Dev. 11, 321; Lee's Case, 3 Leon. 111; Tilbury v. Barbut, 3 Atk. 617; Moore v. Parker, 1 Ld. Raym. 37; Id., 4 Mod. 316; Fearne, Exec. Dev. 363, 364, 336; Goodman v. Goodright, 2 Burrows, 873. There cannot be an executory devise after an indefinite failure of issue. But if this be not void, as an executory devise, yet the estate cannot vest in Mary and Charlotte, until the event has happened on which it is limited to them, viz. the dying of Clementina without issue, and Harriet without issue, that is, both of them, not one only. They have not so died, and therefore Mary and Charlotte, or their heirs, cannot now take. Swinb. Wills, 173.

Searle, in reply, for demandant. It is contended, that the two first devisees took as tenants in common. Our statute imposes on this devise a construction of a tenancy in common, unless a clear and manifest intention appears to the contrary. And surely nothing of the kind appears in the will. For although, in a subsequent devise, a tenancy in common is expressly given, yet it is in a distinct clause from the one in question, and I doubt whether it can be used legally to aid in the construction of it. Different clauses, or devises in a will may be used to explain each other, but in cases only, where the different clauses relate to the same devises, or the same subject matter. Besides, it is not presumable, that the testator dictated the phraseology in the clause, especially the technical words used in the latter; and if he did dictate the technical words, it is presumed he would have dictated technical words in relation to the first clause, if he had intended a joint tenancy. It cannot be presumed, therefore, that either the testator or the scribe had any idea, that the language of the last devise would or could affect the construction of the first devise, and it ought not, of course, to affect it. No part of the will can be called in to aid this particular devise as to this point, and it must, therefore, be decided by the rules of law; and our statutes settle it beyond all doubt to be a tenancy in common in Harriet and Clementina. This construction is, I think, confirmed by reflection. The testator no doubt supposed, that this was a very liberal provision for both of those daughters, and their families, and it is not presumable, that he could intend, that one should have a provision, which is large and liberal for both. If half was sufficient for one, while both lived, it would be equally so, when the other was dead. It cannot fairly be presumed, that the testator intended entirely to disinherit the

children of the daughter, who might die; for although on the having of issue the fee simple was in such deceased daughter, yet the testator clearly contemplated a benefit thereby to the children such daughter might leave. He supposed, that if his daughter left a fee simple, her children might directly or indirectly be benefited by it, and their mother would be able to provide for them. And although they took nothing from him, yet they might take from her. And hence he limited the fee simple to her on the contingency of her having issue, indicating very clearly to my mind, an expectation, that the surviving children might be benefited, as their mother's heirs, by means of the devise to her. It cannot therefore fairly be presumed, that he intended the first devisees should take as joint tenants; for if they did, the survivor would take the whole, although the deceased sister had left a large number of children. But it was, as before stated, evidently his idea and intention, that if the deceased sister had children, she should have an estate in fee simple, from which she would have it in her power to provide for them. It is contended on the other side, that admitting the two first devisees took as tenants in common, yet the second devisees cannot take the deceased sister's half. That before the devise over can take any effect in all, both the first devisees must die leaving no issue. This is a preposterous construction; and if it be a sound one, the deceased sister's half might have been in abeyance fifty years, waiting the event of the survivor's death without issue. And if she died leaving issue, it seems, that this half would have been undisposed of by the will, and remained as an intestate estate, and descended to all his heirs at law, some of whom it is very evident he never intended should have any part of this estate. The survivor could not take as tenant in common, and the second devisees could not take, as the survivor left issue. Surely there can be no foundation for such a construction. The testator clearly intended to dispose of all his estate, and by the will has legally disposed of all of it. And he has disposed of the estate in question among his four daughters, intending that the two several devisees should take all or half, or none, according to the contingency of the first devisees, or either of them, dying leaving no issue. The only just exposition of the devise is, to construe it distributively throughout, viz. He gives his two daughters, Harriet and Clementina, the estate as tenants in common; but if they, or either of them, die leaving no issue, then the share of such as so die leaving no issue, is to pass over immediately to the second devisees by way of executory devise.

STORY, Circuit Justice. Upon the facts in this case several important points have arisen; and as every question, touching the nature and effect of devises of real estate, materially affects the title of purchasers, we have taken time to consider them. In no branch of the law is a more cautious examination of authorities necessary; and indeed in no branch are the principles more generally built upon artificial and technical reasoning. It is quite another consideration, whether these principles were originally the most correct or equitable, that could have been adopted. It is sufficient, that they are now incorporated into the law, and cannot be separated from it without shaking the very foundations of all landed titles. We are at liberty in last wills and testaments to effectuate the intention of the testator, if by law it can be done. But in ascertaining what that intention is, the construction, which has been put upon like words, and the artificial rules, by which it is sifted and fixed in the authorities, are to be our inflexible guides, where they distinctly and pointedly apply. We are not permitted to indulge in conjectures, however plausible, as to the private intention of the party, when the law has already pronounced its own mode of investigating and deciding it.

The first question is, what is the nature and quality of the estate taken under the devise by the daughters of the testator, Harriet and Clementina? Is it an estate tail, or a fee simple? Is it a joint tenancy, or tenancy in common? The testator, after devising a life estate in the lands in controversy to his wife, devises it, "after her decease, to his two beloved daughters, Harriet and Clementina, to them, their heirs and assigns for ever." If the will had stopped here, there would have been no question, that the daughters took a fee simple. But the testator adds, "but in case they should die without issue, my will is, that the same shall go to, and vest in, their two sisters, Mary and Charlotte."

It was supposed at the argument, that the words "if they should die without issue" did not mean a general failure of issue at an indefinite period of time, but a failure at the death of the first takers, or one of them. If this be the legal import of the words, it will certainly add some weight to the argument, that they do not operate to abridge the absolute fee given by the previous clause; for then the limitation over being to take effect, if at all, upon the death of a person in esse, might clearly be good, as an executory devise. Fearne, Exec. Dev. 352; Pells v. Brown, Cro. Jac. 590; Goodtitle v. Wood, Willes, 211, and other cases cited in Lippett v. Hopkins [Case No. 8,380]; Doe v. Wetton, 2 Bos. & P. 324; Jackson v. Staats, 11 Johns. 337. If, on the other hand, these words are to be construed as referring to an indefinite failure of issue, then, unless the estate be in tail only, the limitation over will be on a contingency too remote, and consequently void. Fearne, Exec. Dev. 322; Denn v. Shenton, Cowp. 410; Chadock v. Cowley, Cro. Jac. 695; Brice v. Smith, Willes, 1; Comyn, Dig. "Devise," ō,

and cases cited in Lippett v. Hopkins [supra]; 6 Cruise, Dig. "Devise," c. 17, § 22, etc.; Id. c. 18, § 17, etc. The general principle to be extracted from the authorities is, that the words "dying without issue," in reference to freehold estates, are to be construed an indefinite failure of issue, unless there be something in the context. which manifestly confines the sense to a definite period of time. In respect to terms of years, and other personal estate, courts have very much inclined to lay hold of any words to tie up the generality of the expression "dying without issue," and confine it to dying without issue living at the time of the person's decease. But in respect to freeholds, the rule has been rigidly enforced, and rarely broken in upon, unless there were strong circumstances to repel it. Fearne, Exec. Dev. 357, 361 (Butler's Ed., 471, 476); Crooke v. De Vandes, 9 Ves. Jr. 197; Dansey v. Griffiths, 4 Maule & S. 61. The cases of Porter v. Bradley, 3 Term R. 143, and Roe v. Jeffery, 7 Term R. 589, have gone a great way; but they turn on distinctions, which though nice, clearly recognise the general rule. In the first case, the devise was "to my son A and his heirs and assigns, and in case he should happen to die, leaving no issue behind him, then to my wife B during her widowhood, and after her decease or marriage, to my son C, his heirs and assigns for ever." Great stress was laid upon the words "leaving no issue behind him," and upon the circumstance of there being a life estate to B, as confining the contingency to the death of A; and the court held, that A took a fee, and that the devise over was a good executory devise. In the last case, the devise was "to my grandson A, and his heirs for ever, but in case A should depart this life and leave no issue, then the premises should return unto his granddaughters B, C, D, or the survivor or survivors of them, to be equally divided betwixt them, share and share alike." The court held, that A took a fee, and that the executory devise over was good, the contingency being confined to a life then in esse. Great stress was laid upon the circumstance, that the granddaughters were then living, and only took estates for life. If the estates over in this last case had been in fee, it seemed admitted, that the other words would not have pointed to any other period than an indefinite failure of issue; and consequently to support the limitation over it must have been held, that A took an estate tail only. In the case now before the court, assuming that the devise over to Mary and Charlotte was in fee, there is not the slightest circumstance, from which we can infer, that the testator intended, that it should take effect (if at all) only upon the failure of issue at the death of the first devisees. In this view, it falls completely within the authorities. which pronounce the limitation over to be upon a general and

indefinite failure of issue. I need not recite these authorities; they are numerous, and so pointed, that it is impossible to make any solid distinction. See authorities cited; Lippett v. Hopkins [Case No. 8,380]; Fearne, Exec. Dev. 322, etc. (Butler's Ed., 444); 6 Cruise, Dig. "Devise," c. 17, § 22, etc.; Id. c. 18, § 17; Denn v. Shenton, Cowp. 410; Tenny v. Agar, 12 East, 253; Dansey v. Griffiths, 4 Maule & S. 61. On the other hand, assuming that the devise over gave life estates only to Mary and Charlotte (a construction, which puts an end to the demandant's claim), it does not follow, that the previous estate is at all events to be held a fee simple. That is only one circumstance, from which an intent to limit the contingency to the death of, the first devisee may be inferred; but it is not decisive as to the extent of the estate previously devised; for such a contingency may as well be limited upon an estate tail as an estate in fee. Spalding v. Spalding, Cro. Car. 185, and cases cited; Lippett v. Hopkins [supra]; Fearne, Exec. Dev. 308, 398. In Porter v. Bradley, Lord Kenyon said, "If the devise had been, and in case he (A,) shall die without heirs, then over," it would have given to A an estate tail. Yet in that case there was. a subsequent limitation on failure of A's issue to the testator's widow for life. So in Webb v. Hearing, Cro. Jac. 415, the devise was "to A, my son, after the death of my wife, and if my three daughters, or either of them, do outlive their mother, and A, their brother, and his heirs, then they to enjoy the same for term of their lives;" and it was held, that A took an estate tail only. See, also, Tyte v. Willis, Cas. t. Talb, 1; Forth v. Chapman, 1 P. Wms. 663; Roe v. Scott, Fearne, Exec. Dev., note by Powell, p. 363. It may also be admitted, as is asserted by the late learned Mr. Fearne,—Fearne, Rem. 376 (Butler's Ed., 488),—that though an executory devise in tail, or in fee, to one in esse, after a dying without issue, is void; yet that an executory devise for life to one in esse, to take place after a dying without issue, may be good; because in the latter case the future limitation being only for the life of one in esse, it must necessarily take place during that life, or not at all; and therefore the failure of issue in that case is confined to the compass of a life in being. But it by no means follows from this admission, that every such limitation over for life is to be construed an executory devise; for an estate for life may well be limited to take effect after an indefinite failure of issue, in which case it is a mere vested remainder for life, after an estate tail. Fearne, Rem. 148 (Butler's Ed., 215, etc.). What, therefore, shall be the effect of a limitation over for life to one in esse after a previous estate devised, which may be either an estate in fee, or in tail, depends upon the context and intention of the testator, to be collected from the whole will. It may be ei-

ther a regular remainder, or an executory devise, as the intention of the testator may be best answered.

Upon a full consideration of this will, I am of opinion, that Harriet and Clementina took estates tail only, and that the devise over to Mary and Charlotte is a technical remainder, either for life, or in fee, and not an executory devise. In my judgment, the testator intended the devise over to take effect upon the regular determination of the preceding estate, whenever it should happen, and not merely upon the event of its happening at the death of the first devisees. It is clearly settled, that though after a limitation to A and his heirs, a devise over to a stranger, after a dying without heirs, is void, as being too remote; yet that if such devise over be to a person, who is a relation of, and capable of being a collateral heir to, the first devisee, in that case the first devisee takes only an estate tail; because the limitations over to a collateral heir shows, that lineal heirs only could have been intended by the testator. Fearne, Exec. Dev. 350 (Butler's Ed., 466); Porter v. Bradley, 3 Term R. 143; Parker v. Thacker, 3 Lev. 70; Brice v. Smith, Willes, 1; Morgan v. Griffiths, Cowp. 235; Preston v. Funnell, Willes, 165; Goodright v. Goodridge, Id. 370. But if in such a case the devise over be after a dying without issue, there the word "issue" clearly qualifies the meaning of the preceding word "heirs," and will reduce the first estate to a fee-tail, whether the devise over be to a stranger, or to a collateral heir. Denn v. Shenton, Cowp. 410; Chadock v. Cowley, Cro. Jac. 695; Brice v. Smith, Willes, 1; Comyn, Dig. "Devise," note 5; Lippett v. Hopkins [supra], and cases there cited. These cases completely govern all cases, where the limitation is upon an indefinite failure of issue, and that as well, when the estate over is for life, as in fee. Porter v. Bradley, 3 Term R. 143; Webb v. Hearing, Cro. Jac. 415; Tyte v. Willis, Cas. t. Talb, 1; Forth v. Chapman, 1 P. Wms. 663; Roe v. Scott, Fearne, Exec. Dev. 363, note by Powell; Tilbury v. Barbut, 3 Atk. 617; Tenny v. Agar, 12 East, 253; Dansey v. Griffiths, 4 Maule & S. 61. In the present case, there is no intent appearing to make the words carry any other sense, than what they import at law, viz. an indefinite failure of issue. If so, then the estate in the first devisee is clearly an estate tail. This interpretation will be conclusively established, if cross remainders are to be implied between Harriet and Clementina, and the devise over is to take effect only upon the death of both of them without issue, a point, which it now becomes necessary to consider. The devise over, is, "in case they (Harriet and Clementina) should die without issue, then my will is, that the same shall go to, and vest in, their two sisters, Mary and Charlotte." It is argued, that Harriet and Clementina take as tenants in common, and not as joint tenants; and that the devise over ought to be construed to take effect upon the death of

either of them without issue, as to the moiety of the party so dying.

At common law, if the first devisees took a fee simple, the estate would clearly be a joint tenancy in fee (Co. Litt. p. 181, § 277); and if a fee tail, then they would be joint tenants for life, with several estates tail (Co. Litt. pp. 182, 184, § 283; 2 Vern. 545; Fearne, Rem. 27). But the statute of Rhode Island of 1798 (page 272, § 8) has altered the common law in this respect, and declared all such estates shall be estates in common, unless it shall be expressly declared, or shall manifestly appear to be the intention of the party, that the estate should be joint and not in common. There is no such express declaration or manifest intention in this will, and therefore it must be held, that the first devisees took as tenants in common. It does not, however, follow that the devise over is to take effect upon the death of either of the devisees without issue, as to her moiety; for the language of the testator is, "if they shall die," not if "either of them shall die," then over to Mary and Charlotte. It is argued, that this is the necessary construction, because otherwise the estate as to one moiety might be in abeyance for fifty years, if one sister or her issue should so long survive the other sister and her issue. This supposed difficulty, however, could not occur, except upon the supposition, that the first devisees take in fee simple, and the limitation over is an executory devise; for if they take a fee tail only, then cross remainders in tail may well be implied between them, with a subsequent remainder to Mary and Charlotte. And I am clearly of opinion, that cross remainders in tail are to be implied between the first devisees. This construction comports with the language of the will, and the apparent intention of the testator, and stands confirmed by indisputable authorities. In Holmes v. Meynel, T. Jones, 172, Poll. 425, and T. Raym. 452, the devise was, in effect, to my two daughters, A and B, and their heirs equally to be divided betwixt them; and in case they should happen to die without issue, then to my nephew C, and his heirs male, &c. A died without issue, B surviving, and the question was. whether C was entitled to a moiety of the land; and the court held, that he was not, and that upon the words of the will an estate tail in remainder was given to B by implication. This case is in all material respects like the present, and has been uniformly recognised as law. It is supported by a series of modern decisions, which, so far from narrowing the implication as to cross remainders, have uniformly enlarged every presumption in their favor. Wright v. Holford, Cowp. 31, 6 Brown, Parl. Cas. 156, etc.; Phipard v. Mansfield, Cowp. 797; Atherton v. Pye, 4 Term R. 710; 1 Saund. 185, note 6; Watson v. Foxon, 2 East, 36.

Upon the whole, my opinion is, that Harriet and Clementina took estates in fee tail in the demanded premises, with cross remain-

ders in tail to each in the moiety devised to the other. and an ultimate remainder in the whole to Mary and Charlotte. The only doubt, that has ever occurred to me, was upon the construction, that Mary and Charlotte took life estates only; for if they take in fee, there is nothing on which to hang a reasonable doubt; and if they took life estates only, the present demandant can have no title to recover.

Whether Mary and Charlotte took an estate of inheritance or not, it is unnecessary to decide. To pass an estate of interitance by a will, there must be express words of limitation, or words tantamount. Right v. Sidebotham, Doug. 759. Many of the devises, which have been held to pass life estates only, seem much more strongly to point to a fee than the present. Woodward v. Glasbrook, 2 Vern. 388; Pettywood v. Cook, Cro. Eliz. 52; Hawkins' Case, 2 Leon, 129; Roe v. Holmes, 2 Wils. 80; Roe v. Jeffery, 7 Term R. 589; Foster v. Romney, 11 East, 594; Denne v. Page, Id. 603, note; Roe v. Daw, 3 Maule & S. 518; Doe v. Pearce, 1 Price, 353; Paice v. Archbishop of Canterbury, 14 Ves. 364; Hay v. Earl of Coventry, 3 Term R. 83; Doe v. Allen, 8 Term R. 497; Comyn, Dig. "Devise," note 7; Clayton v. Clayton, 3 Bin. 476. Let judgment be entered. that the demandant take nothing by his writ.